COMMONWEALTH *vs.* SAMSON MISQUINA.[1]

No. 11-P-1034.

Suffolk. May 8, 2012. - July 19, 2012.

Present: KAFKER, BROWN, & VUONO, JJ.

*Indecent Assault and Battery. Assault and Battery. Practice, Criminal,* Argument by prosecutor. *Evidence,* First complaint.

At the trial of a criminal complaint charging the defendant with indecent assault and battery on a person who was fourteen years or older, as well as assault and battery, the prosecutor, by suggesting in closing argument, without evidentiary support, that the complainant had made a consistent, detailed complaint to three people in addition to the first complaint witness, improperly implied that the prosecutor possessed knowledge corroborating the complainant's testimony beyond what was in evidence; because this error was prejudicial to the defendant, in that the evidence against the defendant was not overwhelming, the complainant's credibility was crucial, and the judge gave no specific curative instruction to the jury, this court reversed the convictions and set aside the verdicts. [206-208]

COMPLAINT received and sworn to in the Roxbury Division of the Boston Municipal Court Department on November 20, 2008.

The cases were tried before *David B. Poole*, J.

*Timothy St. Lawrence* for the defendant.

*Paul B. Linn*, Assistant District Attorney, for the Commonwealth.

KAFKER, J. The defendant, Samson Misquina, was convicted at a jury trial of one count of indecent assault and battery on a person who was age fourteen or older, and one count of assault and battery. He argues on appeal that he was prejudiced when the prosecutor, in her closing argument, and over his objection, argued facts not in evidence and thereby improperly bolstered

---

[1]As is our custom, we spell the defendant's name as it appears in the complaint.

the credibility of Jane.[2] We agree and therefore reverse his convictions.

We briefly summarize the evidence presented by the Commonwealth. The defendant and Jane were acquaintances who worked in the same building. Jane was employed as a security guard, and the defendant worked as a parking lot attendant; he was stationed in a booth in the building's parking lot. Jane testified that as she was leaving work on September 8, 2008, the defendant called to her from the parking booth. When she approached the booth, he grabbed her vagina and then her wrist. A scuffle ensued, and Jane was able to get away. Jane further testified that she was on her cellular telephone with her boyfriend when this occurred. She told her boyfriend what happened, and then she called her work supervisor. She called the police from work the next day. Both officers who were involved in the investigation testified at the trial.

The contested portion of the Commonwealth's closing is as follows: "The essential facts of this case remained the same from two years ago until now. They were the same when they happened. They were the same when [Jane] reported them to her boyfriend, . . . the same when she reported them to her boss, the same when she reported them to [the two police officers] . . . . [S]he was walking down the garage ramp, the defendant called her over. She went over to him. They had a brief conversation. He leaned forward, grabbed her by her vagina, and then grabbed her wrist, and tried to pull her into the booth. That is exactly what she told you, *every person at every stage of this case*" (emphasis supplied).

The boyfriend (now Jane's husband) testified largely consistently with this narrative as the designated first complaint witness.[3] See *Commonwealth* v. *Aviles*, 461 Mass. 60, 67-68 (2011), and cases cited. However, there was no evidence that Jane recounted these details to the other three people identified

____

[2]A pseudonym for the complainant.

[3]The husband's testimony differed from that of Jane in terms of the order in which events occurred, but the jury would have understood that in light of the closing argument as a whole. The Commonwealth's argument was proper as far as the husband's testimony, and the defendant does not challenge this portion of it.

in the Commonwealth's closing. Jane did not so testify. The supervisor (her boss) did not testify at all. During the testimony of the two police officers, the prosecutor, to steer clear of first complaint constraints, was careful to avoid asking about the fact or substance of any report of sexual assault, instead eliciting only that the officers met Jane and talked to her. See *id.* at 68, citing *Commonwealth* v. *Arana*, 453 Mass. 214, 223 (2009). Defense counsel did inquire into certain inconsistencies between the officers' reports and Jane's testimony but did not elicit the details referenced in the Commonwealth's closing.[4]

"References to facts not in the record or misstatements of the evidence have been treated as serious errors where the misstatement may have prejudiced the defendant." *Commonwealth* v. *Santiago*, 425 Mass. 491, 499-500 (1997), *S.C.*, 427 Mass. 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998). There was no evidentiary support for the Commonwealth's suggestion that Jane made a consistent, detailed complaint to three additional people beyond the first complaint witness. The prosecutor's remarks improperly implied that she possessed additional knowledge corroborating Jane's testimony beyond what was in evidence. See *Commonwealth* v. *Gaudette*, 441 Mass. 762, 770 (2004), and cases cited. Additionally, implying the existence of such reports and their contents constituted back door piling on of complaints on top of the first complaint testimony. See *Commonwealth* v. *Arana*, *supra* at 223, quoting from *Commonwealth* v. *Stuckich*, 450 Mass. 449, 457 (2008).

Because the defendant timely objected to the prosecutor's improper argument, "we evaluate whether the defendant was prejudiced thereby, considering the remarks in the context of the entire argument, the trial testimony, and the judge's instructions to the jury." *Commonwealth* v. *Beaudry*, 445 Mass. 577, 584 (2005).[5] We therefore employ the prejudicial error standard set out in *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994): "(1) [W]as there error; and (2) if so, was that error prejudicial.

---

[4]Defense counsel did ask one of the officers whether Jane had "told you that she had been assaulted by a guy in a booth," to which he responded, "Yes."

[5]The defendant objected both on the grounds that it was not in evidence and that the argument violated the first complaint doctrine.

An error is not prejudicial if it 'did not influence the jury, or had but slight effect'; however, if we cannot find 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,' then it is prejudicial." *Commonwealth* v. *Cruz*, 445 Mass. 589, 591 (2005), quoting from *Commonwealth* v. *Flebotte, supra.*

Errors such as this are more likely to be prejudicial where, as here, "the evidence was not overwhelming, the misstatement went to the heart of the case, and no specific curative instructions were given." *Commonwealth* v. *Santiago*, 425 Mass. at 500. The evidence in this case was not overwhelming. Also, the jury reached their verdicts only after sending notes to the judge asking "what happens if we are not 100 percent positive?" Although there is a videotape recording of the defendant's interaction with Jane, it is inconclusive, as the prosecutor conceded in her opening statement. Jane's credibility was therefore crucial.

The defense strategy was to highlight inconsistencies in Jane's statements and to emphasize her lack of credibility. Defense counsel argued that Jane was motivated to fabricate the attack in order to deflect scrutiny of her lack of credentials for her job. The defendant introduced evidence to the effect that the events in question occurred during Jane's first ninety days of employment. During this period, she was repeatedly asked for proof that she had a high school diploma, which was a requirement for her job as a security guard. She had not graduated from high school. After the alleged assault, she submitted a forged high school transcript to her employer, including false grades, classes, class rank, test scores, and signatures of nonexistent school officials. The suggestion by the Commonwealth that Jane's account in fact remained consistent was therefore critical in reestablishing her credibility. See *Commonwealth* v. *Beaudry, supra* at 585.

It is possible that a specific curative instruction might have sufficiently mitigated any prejudice, but the judge merely gave the standard instructions that closing arguments are not evidence and the jury should rely on their own memory of the evidence. These general instructions were not sufficient to cure the prejudice from the prosecutor's misstatement of the evidence on

a key point. See *ibid.* See also *Commonwealth* v. *Coren*, 437 Mass. 723, 731 & n.8 (2002). Because we cannot find with fair assurance that the judgment was not substantially swayed by the error, we must reverse the defendant's convictions. See *Commonwealth* v. *Flebotte, supra*; *Commonwealth* v. *Cruz, supra*.

*Judgments reversed.*

*Verdicts set aside.*