NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1004                                        Appeals Court

COMMONWEALTH  vs.  ALEXANDER MATTEI.


No. 14-P-1004.

Essex.     May 10, 2016. - October 27, 2016.

Present:  Cypher, Blake, & Henry, JJ.


Assault with Intent to Rape.  Assault and Battery.
    Deoxyribonucleic Acid.  Evidence, Expert opinion, Cross-
    examination.  Witness, Expert, Cross-examination.
    Practice, Criminal, Instructions to jury, Argument by
    prosecutor, Confrontation of witnesses.  Constitutional
    Law, Confrontation of witnesses.



    Indictments found and returned in the Superior Court
Department on May 22, 2002.

    Following review by the Supreme Judicial Court, 455 Mass.
840 (2010), the cases were tried before Timothy Q. Feeley, J.


    Karl R.D. Suchecki for the defendant.
    Catherine L. Semel, Assistant District Attorney, for the
Commonwealth.


    CYPHER, J.  The defendant, Alexander Mattei, appeals from

his convictions of assault with intent to rape and assault and

battery.  On appeal, the defendant challenges:  (1) the

admission of testimony of a substitute DNA analyst; (2) the judge's ruling curtailing cumulative cross-examination regarding what effect information regarding the criminal histories of other workers at the victim's residence might have had on the police investigation; (3) the judge's failure to give a Bowden[1] instruction; and (4) statements by the prosecutor in closing argument.  We affirm.

Background.  In April, 2002, the defendant and three other inmates were on work release from the Lawrence Correctional Alternative Center on the day of the incident.  They were working at a housing complex for the elderly and disabled, which is run by the Andover Housing Authority.  The victim, a resident of the housing complex, was attacked in her apartment and "sustained numerous trauma about her face."  She was taken by ambulance to the hospital for treatment.  From there the victim was transferred to New England Medical Center, where she was treated by eye specialists.

1.  The substitute analyst.  The defendant claims that admission of the deoxyribonucleic acid (DNA) opinion testimony of crime laboratory analyst Brian Cunningham violated his confrontation rights because Cunningham:  (1) did not conduct the DNA testing in this case; (2) was not employed by the crime

---

[1] See Commonwealth v. Bowden, 379 Mass. 472, 486 (1980).

lab at the time the testing was conducted by analyst Stacey Edward; and (3) reached a conclusion that "conflicted in significant part" with the conclusion of the analyst (Edward) who conducted the DNA testing concerning two key pieces of evidence (mixed sample DNA recovered from the defendant's sweatpants and the interior doorknob of the victim's apartment).

At trial, the defendant objected to Cunningham's testimony only because Edward had conducted the original testing.  There was no error in the admission of the testimony.  An expert may testify as to his opinion, even if it is based on work conducted by another analyst.  See Commonwealth v. Nardi, 452 Mass. 379, 390-391 (2008); Commonwealth v. Barbosa, 457 Mass. 773, 786 (2010); Commonwealth v. Grady, 474 Mass. 715 (2016) (substitute analyst may testify to own opinion based on substitute analyst's review of underlying data).

The defendant made no reference in his objection to the timing of Cunningham's employment at the lab or the nature of Cunningham's conclusions.  Cunningham testified that the testing of each item had been conducted by Edward; he had reviewed her testing and reached his own conclusions that formed the basis for his testimony in court.  According to the defendant, effective confrontation was hampered by the fact that Cunningham was not employed at the lab at the time the testing was

conducted and that his opinion regarding the results conflicted with the original analyst.

The defendant relies on Commonwealth v. Tassone, 468 Mass. 391 (2014), to support his argument that his confrontation rights were abridged because Cunningham was not employed at the lab when Edward conducted the test. This case is distinguishable from Tassone, in which the testifying expert was never employed by the lab that performed the testing and, therefore, had no personal knowledge of its evidence handling and testing protocols. See id. at 401. Here, Cunningham was employed by the lab that conducted the DNA analysis and testified to his familiarity with the protocols and review procedures during the relevant time period. Cunningham's employment at the lab began one month after Edward performed the DNA analysis in 2002; thus, Cunningham was working there in March, 2003, when Edward's work underwent technical and administrative review. Unlike in Tassone, the defendant here had "a meaningful opportunity to cross-examine the expert as to the reliability of the underlying facts or data."[2] Id. at 402.

---

[2] "With DNA analysis, the testing techniques are so reliable and the science so sound that fraud and errors in labeling or handling may be the only reasons why an opinion is flawed." Commonwealth v. Jones, 472 Mass. 707, 716 (2015), quoting from Commonwealth v. Barbosa, 457 Mass. 773, 790 (2010).

Although the defendant complains that he was unable to question Cunningham about a mix up of the DNA samples because Cunningham was not employed by the lab at that time, the defendant was able to question the person who was ostensibly responsible for the error, Carol Courtwright, the forensic chemist who testified about the collection and handling of DNA evidence. She was also meaningfully cross-examined.

Inasmuch as the defendant challenges the discrepancy between the conclusion drawn by Cunningham, who testified that the DNA profile constituted a "match," and the prior testimony of Edward, who testified that she could not exclude the defendant as a potential source of the DNA samples, Cunningham properly testified to his own conclusions, based on his independent review of Edward's testing. "[S]uch testimony is permissible provided that the testifying analyst 'reviewed the nontestifying analyst's work, . . . conducted an independent evaluation of the data,' and 'then expressed her own opinion, and did not merely act as a conduit for the opinions of others.'" Commonwealth v. Jones, 472 Mass. 707, 715 (2015), quoting from Commonwealth v. Greineder, 464 Mass. 580, 595 (2013). An expert witness may testify to his or her independent opinion, even if based on a nontestifying analyst's test results, without violating a defendant's confrontation rights under the Sixth Amendment to the United States Constitution or

art. 12 of the Declaration of Rights of the Massachusetts Constitution.

2.  The limit on cumulative cross-examination.  The defendant argues that the judge erred by restricting his cross-examination of Sergeant Mark Higginbottom, from whom the defendant sought to elicit testimony showing that the police investigation was compromised by their failure to inquire into the criminal histories of other workers at the victim's residence.

At trial, the defendant sought to demonstrate that had police known about the criminal records of certain other potential suspects, that knowledge would have shifted the focus of their investigation away from the defendant.  "It is well settled that a defendant has a right to expose inadequacies of police investigation."  Commonwealth v. Reynolds, 429 Mass. 388, 391 (1999).  Sergeant Higginbottom testified on cross-examination that he did not investigate the criminal history of other workers at the victim's residence.  The judge then restricted the defendant to inquiring of only one police witness, lead investigator Sargent Charles Heseltine, as to whether knowledge of the criminal histories of other suspects would have made a difference to the investigation.  Defense counsel elicited testimony from Sergeant Heseltine that, had he

known of the criminal records of certain other suspects, he would have changed the focus of his investigation.

Because evidence concerning the failure of the police to conduct a thorough investigation was introduced though the testimony of Sergeant Heseltine, there was no error and no abuse of discretion in limiting the cross-examination of Sergeant Higginbottom, whose testimony would have been cumulative of the permitted evidence. See Commonwealth v. Perez, 444 Mass. 143, 149-150 (2005), quoting from Commonwealth v. Reynolds, 429 Mass. 388, 391 (1999) ("When viewed in the entirety of the examination, it could not be said that [the defendant] was denied his 'right to expose inadequacies of [the] police investigation,' or that the judge abused his discretion in sustaining the Commonwealth's objection in light of the speculative, collateral, and potentially prejudicial subject matter that would be opened up by requiring this witness to answer the questions put by defense counsel"); Commonwealth v. Bonds, 445 Mass. 821, 831 (2006). See also Mass. G. Evid. § 403 (2015) (trial judge has discretion to exclude evidence if it is merely cumulative).

3. The Bowden instruction. The defendant further argues that, because the defense theory rested mainly on inadequacies of the police investigation, the judge's refusal to issue a Bowden instruction impaired his ability to present a full

defense.  See Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980).  "[A] judge is not required to instruct on the inadequacies of a police investigation.  Bowden simply holds that a judge may not remove the issue from the jury's consideration."  Commonwealth v. Williams, 439 Mass. 678, 687 (2003), quoting from Commonwealth v. Boateng, 438 Mass. 498, 506-507 (2003).  See Commonwealth v. Avila, 454 Mass. 744, 767 (2009) (Bowden makes it "clear that a judge may not remove the issue of a biased or faulty police investigation from the jury," but "the giving of [a Bowden] instruction is never required").

Here, the judge did not remove the issue from the jury's consideration, but rather permitted the defendant to elicit testimony concerning the failure of the police to collect evidence and investigate other potential suspects "and so complied fully with Bowden's only requirement."  Williams, supra.  The issue, pressed by defense counsel in his closing argument, was properly before the jury.  Accordingly, there was no abuse of discretion in the judge's refusal to give a Bowden instruction.

4.  The closing argument.  Finally, the defendant argues that the prosecutor created a substantial risk of a miscarriage of justice during her closing argument by appealing to the sympathy of jurors, shifting the burden of proof onto the

defendant, opining on the strength of the Commonwealth's evidence, and misstating the evidence.

The defendant claims that the prosecutor engaged in speculation and sought to evoke sympathy for the victim when she stated that the defendant believed that he could overcome a visually impaired woman who would be unable to identify him, and again when she stated that the victim "would have submitted, and [the defendant] would have put his penis in her anus but for the fact that something spooked him."  Contrary to the defendant's claim that the prosecutor's statements amounted to speculation, there was evidence from which a jury could have found that the defendant knew the victim to be visually impaired and intended to penetrate her when he ordered her to pull down her underpants and thrust his penis against her buttocks.  "Because the line separating speculation and inference is often a fine one, 'we must and do recognize that closing argument is identified as argument.'"  Commonwealth v. Bresilla, 470 Mass. 422, 437-438 (2015), quoting from Commonwealth v. Kozec, 399 Mass. 514, 517 (1987).  The statements complained of are reasonable inferences based on the evidence presented at trial, and not so inflammatory as to encourage the jury to determine the verdict on the basis of sympathy for the victim.  Compare Commonwealth v. Baran, 74 Mass. App. Ct. 256, 283 (2009).

The next claim concerns the prosecutor's use of rhetorical questions concerning the defendant's motive in knocking on the victim's door.  The defendant correctly states the general rule that "rhetorical questions should not be used in closing argument where they could be perceived by the jury as shifting the Commonwealth's burden of proof to the defendant." Commonwealth v. Habarek, 402 Mass. 105, 111 (1988).  See Mass. G. Evid. § 1113(b)(3)(E) (2016).  However, viewed in context, the questions did not intimate that the defendant had an affirmative duty to present evidence, but rather suggest that the defendant's explanation for knocking on the victim's door was implausible, and that he had already formed an intent to assault her when he observed her entering her apartment.  We perceive no burden shifting in the prosecutor's use of rhetorical questions.  See Commonwealth v. Nelson, 468 Mass. 1, 13 (2012).

The defendant also takes issue with the prosecutor's description of evidence against the defendant as "overwhelming," citing Commonwealth v. Tuitt, 393 Mass. 801, 811 (1985), for the proposition that a prosecutor may not express personal opinion as to the strength of the Commonwealth's case.  The prosecutor's remarks in this case are distinguishable from those in Tuitt, where the prosecutor opined that the defendant was guilty, whereas here, the prosecutor stated that the evidence

demonstrated the defendant's guilt. "Even if use of the term had been improper, which it was not on this record, it is the type of rhetorical flourish that the jury could put in perspective." Commonwealth v. Jenkins, 458 Mass. 791, 798 (2011).

The defendant asserts that the prosecutor improperly injected her opinion at several other points of closing argument, first stating that there was "only one person" to whom the evidence pointed, next presenting her own theory as to how to resolve conflicting evidence regarding whether the victim had locked her door, and finally characterizing chemist Courtwright's mistakes in handling evidence as insignificant. While a prosecutor's statement of personal belief regarding a defendant's guilt is improper, we do not regard the statements about which the defendant complains here as expressions of opinion, but rather as counter-arguments made in response to defense counsel's closing statements. In closing argument, defense counsel claimed that there were multiple suspects who could have committed the assault, that the victim had locked her door and the defendant did not have a key, and said of Courtwright, "Can you trust anything she did?" "The prosecutor was entitled to offer a response to defense counsel's closing argument." Bresilla, 470 Mass. at 438. "The argument, although not one that flows inevitably from the evidence, asked the jury

to draw . . . inference[s] that 'w[ere] reasonable and possible' (citation omitted)." Commonwealth v. Mazariego, 474 Mass. 42, 58 (2016).

The defendant also maintains that the prosecutor misstated evidence in her closing argument.  The prosecutor asserted that chemist Courtwright mistakenly placed samples from another case in a box with samples from the defendant's case only after the defendant's DNA evidence had already been sent away to be tested at the lab.[3]  Courtwright herself testified that she was unsure when the evidence was mixed, and that she examined samples from the defendant's case in September, a month after she began work on the other case.  The prosecutor appears to have misstated the evidence.  See Mass. G. Evid., § 1113(b)(E)(3).  However, the discrepancy between Courtwright's testimony and the prosecutor's statements does not appear to be material and there is nothing to suggest that the misstatement was intentional.  Confronted at trial with evidence of a DNA match, the defendant did not pursue

---

[3] Regarding Courtwright's mixing of DNA samples, the prosecutor stated:

"[L]et me suggest to you to at least look at the point at which it happened.  After she's processed the evidence. After the evidence is going to go for DNA testing, has already gone to DNA testing, and will never come back. That's the evidence that was contaminated with the Pittsfield murder evidence.  That's the point at which that went in.  Is it wrong?  Yes.  But was her guard maybe down a little bit about how carefully she was handling things when she was done with her work on this case."

the theory that the evidence was contaminated by the samples from another case, a reasonable approach where, as here, "a DNA match is 'itself striking confirmation' that the laboratory tested the correct sample."  Greineder, 464 Mass. at 597 n.18, quoting from Williams v. Illinois, 132 S. Ct. 2221, 2238 (2012).  Instead, defense counsel used the mixed samples to impeach the credibility of the Commonwealth's witness, for which purpose the timing of her mistake was irrelevant.  Moreover, the judge instructed jurors at the start and close of trial that arguments are not evidence in this case.  "[I]nstructions from the judge inform the jury that closing argument is not evidence, and instructions may mitigate any prejudice in the final argument."  Bresilla, supra at 437, quoting from Kozec, 399 Mass. at 517.  The prosecutor's erroneous statement did not give rise to a substantial risk of miscarriage of justice.

                              Judgments affirmed.