NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-726

COMMONWEALTH

vs.

CHRISTOPHER GALLAGHER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Christopher Gallagher, appeals from his convictions, after a jury trial in the District Court, of two counts of indecent assault and battery on a child, G. L. c. 265, § 13B.  Concluding that a comment in the prosecutor's closing argument, though error, did not prejudice the defendant in light of its tangential matter and the trial judge's curative instructions, we affirm.

1.  Standard of review.  We review statements made during a prosecutor's closing argument "in the context of the entire argument, and in light of the judge's instruction to the jury, and the evidence at trial."  Commonwealth v. Sanders, 101 Mass. App. Ct. 503, 511 (2022), quoting Commonwealth v. Braley, 449

Mass. 316, 328 (2007).  "Because the defendant objected to the argument at trial, we review for prejudicial error." Commonwealth v. Andrade, 468 Mass. 543, 551 (2014).[1]  "This means that we inquire[ ] whether there is a reasonable possibility that the error might have contributed to the jury's verdict." Commonwealth v. Souza, 492 Mass. 615, 627 (2023), quoting Commonwealth v. Wolfe, 478 Mass. 142, 150 (2017).  Relevant factors include "whether the judge's instructions mitigated the error . . . whether the errors in the arguments went to the heart of the issues at trial or concerned collateral matters . . . whether the jury would be able to sort out the excessive claims made by the prosecutor . . . and whether the Commonwealth's case was so overwhelming that the errors did not prejudice the defendant."  Commonwealth v. Teixeira, 486 Mass. 617, 635 (2021), quoting Commonwealth v. Niemic, 472 Mass. 665, 673-674 (2015).  "An error is not prejudicial if it 'did not influence the jury, or had but slight effect.'"  Commonwealth v. Santana, 101 Mass. App. Ct. 690, 694 (2022), quoting Commonwealth v. Misquina, 82 Mass. App. Ct. 204, 207 (2012).

2.  Closing argument.  "A prosecutor must limit comment in closing statement to the evidence and fair inferences that can

---

[1] As we did in Commonwealth v. Grinkley, 75 Mass. App. Ct. 798, 807 & n.17, 811 (2009), we reject the argument that error in a prosecutor's closing argument constitutes structural error.

be drawn from the evidence."  Commonwealth v. Lugo, 89 Mass. App. Ct. 229, 234 (2016), quoting Commonwealth v. Cole, 473 Mass. 317, 333 (2015).  "Because the line separating speculation and inference is often a fine one, 'we must and do recognize that closing argument is identified as argument.'"  Commonwealth v. Mattei, 90 Mass. App. Ct. 577, 582 (2016), quoting Commonwealth v. Bresilla, 470 Mass. 422, 437-438 (2015).  "Prosecutors may not, however, appeal to the jury's sympathy."  Commonwealth v. Martinez, 476 Mass. 186, 199 (2017).  "In particular, the 'jury should not be asked to put themselves "in the shoes" of the victim, or otherwise be asked to identify with the victim.'"  Commonwealth v. Witkowski, 487 Mass. 675, 684 (2021), quoting Commonwealth v. Rutherford, 476 Mass. 639, 646 (2017).

During his closing argument, the defendant argued that the female victim and her friend, both of whom had testified as Commonwealth witnesses, were unreliable because their initial out-of-court accounts of the female victim's first complaint[2] had omitted a certain detail found in their trial testimony, specifically that the female victim and her friend had gone to

---

[2] In the context of sexual assault, the first complaint is the victim's first report of the assault to another.  See Mass. G. Evid. § 413 (2024).

3

Wendy's, a fast food restaurant, before the first complaint had occurred.  In response, the prosecutor argued,

> "Well, the first time that [the female victim] ever told anybody -- anyone in authority about this case do you think her primary focus was on the fact that they went to Wendy's first.
>
> "It's an inconsequential fact that we're trying to make mountains out of.
>
> "I'd ask for you to use your common sense.  If that happened to you when somebody asked you for the very first time talk [sic] about arguably what may have been the worst day of your life."

The defendant immediately objected, and the prosecutor agreed to rephrase the offending statement.

Although "[t]he prosecutor was entitled to offer a response to defense counsel's closing argument," Mattei, 90 Mass. App. Ct. at 583, quoting Bresilla, 470 Mass. at 438, the response here was poorly worded in that it asked the jurors to "put themselves 'in the shoes' of the victim," Witkowski, 487 Mass. at 684, quoting Rutherford, 476 Mass. at 646.  Prosecutors generally may not ask jurors to place themselves in the victim's shoes because "a 'focus on the victim distracts attention from the actual issues, and invites the jury to decide guilt or innocence on the basis of sympathy.'"  Witkowski, supra at 685, quoting Commonwealth v. Bizanowicz, 459 Mass. 400, 420 (2011).  See Rutherford, supra (improper to ask jurors to imagine murder victim's last thoughts as he "crawl[ed] away to die");

4

Commonwealth v. Grinkley, 75 Mass. App. Ct. 798, 808-809 (2009) (improper to ask jurors to "[t]hink about what it must have been like" for sexual assault victims). "[T]his type of rhetoric must be used with caution." Witkowski, supra. Accordingly, to the extent jurors could have construed the argument as an invitation to ponder the victim's suffering from a sexual assault, it was error for the prosecutor to ask the jurors to consider "[i]f that happened to [them]."

Nevertheless, the prosecutor's request was not prejudicial. Although the female victim's credibility about the assault was central to the case, see Teixeira, 486 Mass. at 635, whether the witnesses' earlier statements included where the female victim and her friend visited during the female victim's first complaint was a relatively minor point of corroboration. As such, unlike other "in the shoes" arguments, the prosecutor's request did not significantly "distract[ ] attention from the actual issues" or "invite[ ] the jury to decide guilt or innocence on the basis of sympathy." Witkowski, 487 Mass. at 685, quoting Bizanowicz, 459 Mass. at 420.

Moreover, the problematic portion of the argument was of minor importance to the prosecutor's argument as a whole and occupied only three of its 432 lines. The meat of the argument on this point was to ask the jury to "use [their] common sense" in deciding whether these earlier omissions affected the

5

witnesses' credibility.  See Lugo, 89 Mass. App. Ct. at 234. Cf. Commonwealth v. Harris, 11 Mass. App. Ct. 165, 176 & n.9, 177 (1981) (prosecutor's request that jury "[t]hink of what [rape victim] went through by giving this story" and not "let her down" by failing to convict error but did not create substantial risk of miscarriage of justice).  "[T]he jury would be able to sort out" any impermissible appeal to sympathy from the prosecutor's underlying argument.  Teixeira, 486 Mass. at 635, quoting Niemic, 472 Mass. at 673.

Furthermore, before the jurors resumed deliberations the day after the parties' closing arguments, the trial judge provided the jury with instructions requested by the defendant to mitigate the potential prejudicial effect of the prosecutor's request, including that "the closing arguments of the lawyers are not a substitute for the evidence" and "[y]ou may not permit sympathy to affect your verdicts."  "The jury are presumed to follow the judge's instructions."  Andrade, 468 Mass. at 549. Given the improper argument's low potential for prejudice, the supplemental instructions sufficed to correct the error and ensure that it would have "but slight effect" on the jury.

6

Santana, 101 Mass. App. Ct. at 694, quoting Misquina, 82 Mass. App. Ct. at 207.[3]

Judgments affirmed.

By the Court (Ditkoff, Singh & Hodgens, JJ.[4]),

*Paul Little*

Clerk

Entered:  August 27, 2024.

---

[3] It follows from the lack of prejudice that the trial judge acted within her discretion in denying the defendant's motion for a mistrial.  See Martinez, 476 Mass. at 197.

[4] The panelists are listed in order of seniority.