NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-470                                    Appeals Court
16-P-949


COMMONWEALTH  vs.  DANIEL LEARY.


Nos. 15-P-470 & 16-P-949.

Hampden.      January 18, 2017. - September 29, 2017.

Present:  Green, Agnes, & Desmond, JJ.


Motor Vehicle, Homicide, Operating under the
    influence.  Intoxication.  Evidence, Breathalyzer test,
    Field sobriety test, Intoxication, Unavailable witness,
    Previous testimony of unavailable witness,
    Videotape.  Witness, Unavailability.  Practice, Criminal,
    Argument by prosecutor, Instructions to jury, Lesser
    included offense, Assistance of counsel, Motion to
    suppress, Execution of sentence.



    Indictment found and returned in the Superior Court
Department on April 27, 2011.

    A pretrial motion to suppress evidence was heard by C.
Jeffrey Kinder, J.; the case was tried before Tina S. Page, J.;
and a motion to reduce the verdict was heard by Edward J.
McDonough, Jr., J.

    A renewed motion to stay execution of sentence, which was
filed in the Appeals Court on June 8, 2016, was considered
by Trainor, J.


    Barbara Munro for the defendant.

Amal Bala, Assistant District Attorney, for the
Commonwealth.


AGNES, J.  Following a nine-day jury trial in the Superior
Court, the defendant, Daniel Leary, was convicted of motor
vehicle homicide by reckless or negligent operation while under
the influence of alcohol.  See G. L. c. 90, § 24G(a).  The case
comes before us by two routes:  the defendant's direct appeal,
and his appeal from an order of a single justice of this court
denying his renewed motion to stay execution of his sentence
pending the direct appeal.[1]  For the reasons that follow, we
affirm.

Background.  We recite the facts as the jury could have
found them, reserving several details for later discussion.  On
March 25, 2011, at approximately 3:30 P.M., Peter Desrosiers
came to the defendant's house with a "thirty-pack" of beer.  The
defendant was preparing motorcycles for a "motor cross" race the
next day.  About one hour later, the defendant took his
motorcycle to the racetrack, in Southwick, and Desrosiers
followed in his truck, bringing the beer with him.  At the
racetrack, the defendant continued his preparations for the next
day's race.  At approximately 9:00 P.M., the defendant and

---

[1] The defendant's direct appeal and his appeal from the
order of the single justice denying his renewed motion to stay
execution of sentence were heard together by the same panel of
this court.

Desrosiers left the racetrack together in Desrosiers's truck to pick up another motorcycle at the defendant's cousin's friend's home, in West Springfield. The defendant drove because Desrosiers felt drunk, having consumed as many as one dozen beers by this time. They spent about an hour at the cousin's friend's home, drinking beers that the defendant had brought with him, and then left -- without the motorcycle, as it needed repairs -- to return to the racetrack. Again, the defendant drove.

Their route took them through a residential area, along Dewey Street, where the victim was at a friend's home, celebrating another friend's recent engagement. At approximately 10:20 P.M., at the same time as the defendant was driving down Dewey Street, the victim was walking on the side of the road outside his friend's home. When the defendant saw the victim, who was to his right, he swerved to the right, striking the victim. The vehicle continued briefly along the lawn, knocking over a mailbox, before coming to a stop about sixty feet from the point of impact. The victim was taken to an area hospital, where he later died of his injuries.

Officer Brian Duffy of the West Springfield police department arrived at the scene within ten minutes of the accident. While speaking with the defendant, the officer detected a strong odor of alcohol on the defendant's breath, and

he (Duffy) noticed that the defendant's eyes were glassy and bloodshot. Duffy asked the defendant if he had been drinking, and the defendant admitted to having consumed two beers. After the officer administered field sobriety tests, he and another officer who observed the tests, Michael Kennedy, formed the opinion that the defendant was impaired, and they arrested him. At the police station, the defendant blew twice into a breathalyzer machine. Each sample registered a blood alcohol concentration (BAC) of .19 percent.

On April 27, 2011, a grand jury indicted the defendant for motor vehicle homicide by reckless or negligent operation while under the influence of alcohol or with a BAC of .08 percent or greater. See G. L. c. 90, § 24G(a). The defendant's first trial, which began on March 20, 2013, ended in a mistrial. On July 25, 2013, following a nine-day retrial, at which the defendant elected to testify on his own behalf, a jury of the Superior Court convicted the defendant. The verdict form permitted the jury to convict him under either or both of two theories -- that he was under the influence of alcohol, or that his BAC was .08 percent or greater. According to the verdict form, the jury accepted the former theory, and rejected the latter. See note 7, infra.

Discussion. 1. Admissibility of breathalyzer test results. The defendant contends that the judge (suppression

judge) erred by denying his pretrial motion to suppress the results of the breathalyzer test. Those results, he argues, were improperly admitted because the breath test operator did not observe him for fifteen minutes prior to administering the test, in violation of 501 Code Mass. Regs. § 2.13(3) (2010). "The purpose of the fifteen-minute waiting period is to ensure that the defendant has not brought any substance into his mouth, such as food, drink, or regurgitation by burping or by hiccoughing, that would have had a contaminating impact on the accuracy of the results, and to permit a sufficient lapse in time to allow such possible contaminants to clear." Commonwealth v. Pierre, 72 Mass. App. Ct. 230, 231-232 (2008). This regulation was designed to ensure the accuracy of the results. Commonwealth v. Hourican, 85 Mass. App. Ct. 408, 411 (2014). However, "mere 'deviations from meticulous compliance'" do not justify the suppression of breathalyzer test results. Commonwealth v. Zeininger, 459 Mass. 775, 792 (2011), quoting from Commonwealth v. Kelley, 39 Mass. App. Ct. 448, 453 (1995). "[I]n cases where there is a 'substantial deviation,' their admission constitutes reversible error." Ibid., quoting from Pierre, supra at 235.

The record, which includes a video recording of the booking process (booking video) and the breathalyzer test, confirms that the breathalyzer test operator did not, himself, observe the

defendant for the requisite fifteen-minute period. The suppression judge found, however, that there were multiple officers at the booking, and that the defendant was in the presence of one or more of them, continuously, for at least twenty-eight minutes prior to the breathalyzer test. The defendant takes issue with certain details in these findings, such as the precise times that certain officers left or returned to the booking room, and whether one officer was in a position to observe him when he was taken to another area for an additional field sobriety test.

When reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings absent clear error, but conduct an independent review of his ultimate findings and conclusions of law. Commonwealth v. Craan, 469 Mass. 24, 26 (2014). Here, we need look no further than the booking video, upon which the suppression judge relied, to confirm that the defendant was in the presence of one or more of a handful of officers, in a relatively small booking area, for more than the requisite fifteen-minute period. The booking video also confirms the testimony of one of those officers, who was with the defendant for most of the twenty-eight minutes, and who testified that he did not observe the defendant vomit, hiccough, burp, or place anything in his mouth. We agree with the suppression judge that whatever deviation there was from "meticulous compliance" goes

to the weight, not the admissibility, of the results.  Zeininger, 459 Mass. at 792.[2]

2.  Admission of prior testimony of an unavailable witness. Officer Duffy, who responded to the scene of the accident, testified during the defendant's first trial, which ended in a mistrial.  Three months before the date of the retrial, the Commonwealth represented to the trial judge that Officer Duffy would be unavailable to testify at the retrial for medical reasons.  The day before jury selection began in the retrial, the trial judge allowed the Commonwealth's motion to admit the transcript of Officer Duffy's testimony from the first trial, over the defendant's objection.  See Mass. G. Evid. § 804(b)(1) (2017).  After the trial was underway, during a sidebar conference on the day Officer Duffy's testimony was to be recited, counsel withdrew his objection, telling the trial judge that the parties had agreed to the reading of the transcript. Counsel did not object when the prior recorded testimony was admitted.  On appeal, the defendant now argues that the testimony was improperly admitted because the Commonwealth failed to offer evidence of Officer Duffy's unavailability.  In the absence of an objection, we review the admission of this

_____

[2] It is also notable that the accuracy of the test was thoroughly litigated, including through expert testimony, and that the jury declined to convict the defendant based on having a BAC of .08 percent or greater.  See note 7, infra.

evidence, if error, for a substantial risk of a miscarriage of justice. Commonwealth v. Randolph, 438 Mass. 290, 294-295 (2002).

We are satisfied that no such risk is present. Certainly, had Officer Duffy's testimony been excluded, the case against the defendant would have been weaker. But, on review, the question is whether "we are left with uncertainty that the defendant's guilt has been fairly adjudicated." Ibid., quoting from Commonwealth v. Azar, 435 Mass. 675, 687 (2002). In this case, we are left with no such uncertainty. First, at the time of the Commonwealth's motion, the trial judge did not have the benefit of Commonwealth v. Housewright, 470 Mass. 665, 671 (2015), to guide her analysis of witness unavailability. Housewright did not alter existing law, but merely "amplifie[d]" it, and "established a framework for" analyzing unavailability "because of illness or infirmity. . . . Such a framework had not previously existed." Commonwealth v. Dorisca, 88 Mass. App. Ct. 776, 777 n.2 (2015). Second, because the Commonwealth informed the trial judge of the witness's anticipated unavailability well in advance of the trial, this is not a case where "the defendant ha[d] little opportunity to investigate the witness's medical condition to challenge the prosecutor's claim of unavailability." Housewright, supra at 674. Third, and most

importantly, the defendant thoroughly cross-examined the witness at the first trial, a fact that ameliorates potential concerns about the defendant's rights under the State and Federal confrontation clauses.  See Commonwealth v. Sena, 441 Mass. 822, 833-834 (2004).

3.  Closing argument.  The defendant claims that the prosecutor's closing argument was improper for three reasons. We determine whether errors occurred, before determining their cumulative effect.  See Commonwealth v. Niemic, 472 Mass. 665, 673 (2015).

a.  Claimed errors.  First, the defendant argues that the prosecutor improperly injected his personal beliefs into the case when he said, "[T]he Commonwealth doesn't even have to prove that [the defendant] drove in an erratic manner, which he obviously did.  We don't have to prove it."  (Emphasis supplied.)[3]  This was not improper.  The prosecutor "interjected no extraneous material or belief but [merely] expressed [his] view of the strength of the evidence."  Commonwealth v. Smith, 387 Mass. 900, 907 (1983).

---

[3] It appears that the prosecutor sought to emphasize evidence of erratic driving, which bears on negligence, but without misleading the jury into believing that the law requires outright erratic driving.  See Instruction 5.310 of the Criminal Model Jury Instructions for Use in the District Court (2013) (proof of erratic driving not required).

Second, the defendant argues that the prosecutor improperly vouched for the credibility of Officer Kennedy, who was at the accident scene, and who testified to the defendant's performance on the field sobriety tests.  In his closing argument, the prosecutor said,

> "[T]here is really nobody saying that this guy was falling down drunk. . . .  So when Officer Kennedy was saying he was moderately impaired, that was him being honest.  It would be ridiculous if he said, 'Oh, he was heavily impaired.'  He told you the truth, he was moderately impaired."

"A prosecutor is free to provide the jury with the reasons why they should find a witness's observations to be accurate, but she cannot tell the jury that the witness speaks the truth."  Commonwealth v. Penn, 472 Mass. 610, 627 (2015).  The defendant lays particular emphasis on the phrase, "that was him being honest."  However, in context, the prosecutor was not personally vouching for the witness.  Rather, he was arguing to the jury that they should find the testimony credible because it was not exaggerated.

Third, and lastly, the defendant argues that the prosecutor improperly appealed to the jury's sympathies when, nearing the end of his argument, he invited them to "go back in time" and consider whether, knowing all they had learned during the trial, they would have intervened to prevent the victim's death.  The prosecutor told the jury that, if they would not have

intervened, they must return a not guilty verdict,[4] and shortly after, he told them that if they would have intervened, they must convict the defendant.[5]

Although prosecutors may use dramatic descriptions of the facts, an overt appeal to emotions may cause a jury to decide the case based on considerations other than the weight of the evidence.  Commonwealth v. Vuthy Seng, 436 Mass. 537, 555-556 (2002).  We agree that the prosecutor overstepped the bounds of proper argument because he explicitly invited the jury to make their determination based, not on the evidence, but on whether they would have intervened had they been present and known what

---

[4] The prosecutor stated, "So as the first group of people to be able to put this all together and then go back in time, you put it all, everything, and you go back in time.  And you are standing there and you see [the victim] coming out of the house. And you see him walking down the driveway and then you see [the defendant] coming down.  Do you not say anything?  Well, it's no problem.  The car is just going to go the way it's going.  Or, do you, based on everything you know, do you say, 'Whoa, [victim], no, no, no, don't, don't go down the driveway.'  Given everything that you know, which are you going to do?  If you are going to let [the victim], from the position that you now stand knowing everything, walk down to the end of the driveway because there is a perfectly unimpaired reasonable person coming down the street that you know will just stay on the road, if you are comfortable that's what you are going to do, let [the victim] keep walking down that driveway, then I guess you've got to return a verdict of not guilty."

[5] The prosecutor stated, "So you are floating above this case . . . knowing everything you know now, here comes [the defendant] down the street, here comes [the victim] down the driveway, do you say anything?  Because if you say, 'Oh, oh, oh, don't -- let this car go by.'  Your verdict must be guilty."

was soon to transpire.  This form of argument, sometimes described as a "Golden Rule" argument, is improper as it asks the jurors to decide the case based on considerations beyond the evidence.  Commonwealth v. Finstein, 426 Mass. 200, 205 n.1 (1997).  See Commonwealth v. Thomas, 400 Mass. 676, 684 (1987); Commonwealth v. Santiago, 425 Mass. 491, 501 (1997).  See also Mass. G. Evid. § 1113(b)(3)(D) (2017) (impermissible in closing argument "to ask the jurors to put themselves in the position of any person involved in the case").

b.  Analysis.  As the defendant did not object to the prosecutor's closing argument, we review any error for a substantial risk of a miscarriage of justice.  Niemic, 472 Mass. at 673.  We consider a variety of factors to assess the impact of the error.  Santiago, supra at 500 (identifying factors).  Two favor the defendant.  First, the statement did not refer to a collateral issue; it went directly to the essential question of guilt.  Second, the trial judge's instructions to the jury were inadequate to overcome whatever prejudicial effect the statement had.  Although there was an instruction regarding sympathy, it was a generic instruction, bearing no apparent relationship to the specific error.  Whatever mitigating effect it thus had was insufficient to fully remedy the error.  See id. at 501 (jury instruction that neither "specifically mention[ed]

sympathy" nor "correct[ed] the misstatement" was insufficient to remedy error).

The balance of the factors, however, leads us to conclude that there was no substantial risk of a miscarriage of justice. The absence of an objection, in and of itself, suggests that defense counsel did not consider the error to be sufficiently prejudicial as to warrant an objection. See Commonwealth v. Kozec, 399 Mass. 514, 518 n.8 (1987). The error was confined to a single remark. Additionally, jurors are not bereft of some capacity "to discount hyperbole and other improper statements." Santiago, 425 Mass. at 495. Lastly, and most importantly, we perceive no substantial risk of a miscarriage of justice because the Commonwealth presented a very strong case against the defendant. See id. at 501 ("[T]he strength of the Commonwealth's case is particularly crucial where improper appeals to sympathy are made").

The defendant did not dispute that he struck the victim. We therefore focus on the strength of the evidence of his having been under the influence of alcohol. That the defendant had consumed some quantity of alcohol was undisputed. Officer Duffy testified that, at the scene, the defendant said that he had had two beers. The defendant himself, in his testimony, largely confirmed this statement, demurring only slightly by saying he was unsure whether he finished his second beer. There was

extensive evidence -- physical, testimonial, and documentary --
from which the jury could have concluded that the defendant had
consumed more than this amount.[6]  Furthermore, regardless of the
specific quantity of alcohol consumed by the defendant, the
evidence warranted a finding by the jury that he was under the
influence of alcohol -- that is, that he was left with a reduced
ability to drive safely, such as by having decreased alertness,
mental clarity, self-control, or reflexes.  See Commonwealth
v. Connolly, 394 Mass. 169, 173 (1985); Commonwealth v. Riley,
48 Mass. App. Ct. 463, 465 (2000).  See also Instruction 5.310
of the Criminal Model Jury Instructions for Use in the District
Court (2013).[7]

Upon arriving at the crash site, Officer Duffy saw that the
defendant had glassy, bloodshot eyes and smelled the odor of
alcohol on his breath.  He then asked the defendant if he knew

---

[6] The evidence included a photograph of eight empty beer
cans in the bed of the truck the defendant was driving at the
time of the accident.

[7] The breathalyzer test results, both of which measured a
BAC of .19 percent, merit a brief note.  The jury declined to
convict the defendant on the theory that his BAC was 0.08
percent or greater, even though they could have subscribed to
this theory in addition to, rather than in the alternative to,
the theory that he was under the influence.  The defendant
presented testimony from two expert witnesses that, taken
together, suggest that the test results may have been
inaccurate, and artificially high, due to the side effects of a
"lap band" surgical procedure the defendant had previously
undergone.

what time it was -- the defendant said that it was 9:00 P.M. when, in fact, it was 10:35 P.M.  Officer Duffy then asked the defendant if he had been drinking, and the defendant admitted to having two beers.  It was then that Officer Duffy administered the field sobriety tests, which Officer Kennedy witnessed.

The jury also heard testimony from both officers as to the defendant's poor performance on the field sobriety tests.  When the tests began, and the defendant was asked to stand in the "instructional position" -- one foot in front of the other, heel to toe, and arms at his sides -- he was unable to maintain his balance without raising his arms.  He was then asked to recite the alphabet, from C to W.  He slurred through several letters in the middle to the point that neither officer could understand those letters, he continued past W, and started "all over again" at A.  Next, when asked to stand on one leg and count to thirty, he had to place his raised foot down four times, and again he had to use his arms for balance.  Finally, when he was asked to walk a straight line, he failed to count his steps aloud as instructed; he was unable to place one foot directly in front of the other, heel to toe; and he was yet again unable to maintain his balance without raising his arms.[8]

_____

[8] There is no dispute as to the adequacy of Officer Duffy's instructions to the defendant during the tests, and Duffy's testimony reflects that he explained them thoroughly and

The details of the accident itself confirm what the foregoing already reveals -- impairment.  The defendant claimed that he was driving down Dewey Street at a speed somewhere between twenty and twenty-three miles per hour.  Yet, not only was he unable to avoid striking the victim, but after doing so, he continued for another sixty feet, partially along a lawn, and knocked over a mailbox, before coming to a complete stop.  In contrast, a motorist who happened upon the accident almost immediately after it occurred, upon seeing the victim's body lying in the road before him, came to a stop between fifteen and twenty feet before reaching the victim, even though he was traveling at about forty miles per hour.  After he stopped, he made a 911 call, retrieved his flashlight, and went to the victim to see if he was responsive.  By this point, the defendant and Desrosiers were only just exiting their vehicle, sixty feet away.

c.  <u>Assessment</u>.  While reasonable minds may differ as to the strength of each piece of evidence individually, when taken as a whole, the case against the defendant was very strong, and certainly more than sufficient to permit the conclusion that the prosecutor's improper argument did not create a substantial risk of a miscarriage of justice.

properly, including with a demonstration of the line-walking test.

4. Failure to give lesser included offense instruction.
Motor vehicle homicide by negligent or reckless operation is a
lesser included offense of motor vehicle homicide by negligent
or reckless operation while under the influence of alcohol.
G. L. c. 90, § 24G(a), (b).  See, e.g., Commonwealth v. Roth,
437 Mass. 777, 778-779 & n.1 (2002).  Prior to closing
arguments, the Commonwealth asked the trial judge to include an
instruction on the lesser included offense, but after the
defendant objected, the trial judge decided against doing so.
On appeal, the defendant reverses course -- he and the
Commonwealth both agree that the trial judge erred by acceding
to the objection of defense counsel.  See Commonwealth
v. Woodward, 427 Mass. 659, 663-664 (1998).  In addition to his
argument that the trial judge's error directly entitles him to
relief, the defendant presses two related arguments -- that his
counsel was ineffective by objecting to the instruction without
consulting him, and that a different judge improperly denied the
defendant's postconviction motion to reduce the verdict to one
based on the lesser included offense.

a. Relief based on judicial error.  We agree that there
was an error.  "When the evidence permits a finding of a lesser
included offense, a judge must, upon request, instruct the jury
on the possibility of conviction of the lesser crime" (emphasis
supplied).  Commonwealth v. Gould, 413 Mass. 707, 715 (1992).

See Commonwealth v. Shelley, 477 Mass. 642, 643 (2017).
Although this issue typically arises in cases where the judge
declines a defendant's request for such an instruction, rather
than the Commonwealth's, it matters not which party makes the
request. See Woodward, supra. Here, the evidence permitted a
finding on the lesser included offense, and the Commonwealth
requested the instruction; thus, the trial judge had no
discretion to refuse to give the instruction. Id. at 662-663

In a criminal matter, an error in the giving of, or failure
to give, a jury instruction, if occasioned by the defendant's
own request, is regarded as an invited error, and is reviewable
only to the extent necessary to prevent a substantial risk of a
miscarriage of justice.[9] Commonwealth v. Grant, 49 Mass. App.
Ct. 169, 171 (2000). See Commonwealth v. Vinnie, 428 Mass. 161,
180 (1998); Commonwealth v. Simcock, 31 Mass. App. Ct. 184, 196
(1991). See also Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979)

---

[9] Under Federal law, invited errors are generally deemed
unreviewable. See, e.g., United States v. Young, 745 F.2d 733,
752 (2d Cir. 1984); United States v. Console, 13 F.3d 641, 660
(3d Cir. 1993); United States v. Silvestri, 409 F.3d 1311, 1327
(11th Cir. 2005). But see United States v. Wells, 519 U.S. 482,
487-488 (1997) (invited error doctrine does not preclude review
by United States Supreme Court). One court explains that this
result prevails because the right to take exception to the error
is not merely forfeited, but waived, in the strict sense of the
term. See United States v. Perez, 116 F.3d 840, 844-845 (9th
Cir. 1997). See generally United States v. Olano, 507 U.S. 725,
733-734 (1993) (discussing distinction between waiver and
forfeiture).

("No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict"). "We review the evidence and the case as a whole. We consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision." Azar, 435 Mass. at 687. We need not repeat what we have already said about the weight of the evidence, and only remark that it weighs heavily against the conclusion that the trial judge's error created a substantial risk of a miscarriage of justice.

Counterbalancing this are the nature and significance of the error, which implicate not only the "propriety of the verdict returned by the jury," but also "the impropriety of withdrawing from their consideration another verdict which, although they might not have reached it, was nevertheless open to them upon the evidence." Commonwealth v. Kendrick, 351 Mass. 203, 213 (1966). However, these factors do not overcome the weight of the evidence in this case, and the likelihood that the omission of the instruction was a core component of the over-all defense strategy. Because the defendant admitted to striking and killing the victim, including the instruction on the lesser included offense would have created a high degree of risk that

the defendant, if not convicted of the greater offense, would be convicted of the lesser included offense. Such circumstances naturally lend themselves to consideration of an "all or nothing" strategy -- i.e., one designed primarily to undermine the evidence of alcohol consumption in order to win an outright acquittal. The record suggests, quite strongly, that this was the primary defense strategy.[10]

Based on the record before us, the defense strategy was a reasonable one, and we are not "left with uncertainty that the defendant's guilt has been fairly adjudicated." Randolph, 438

---

[10] We say this not only because counsel affirmatively opposed the instruction, but also because of the extensive efforts undertaken to undermine evidence that the defendant had a BAC of .08 percent or greater, and evidence that he was under the influence of alcohol. Counsel went to considerable lengths to call into question the credibility of the .19 percent breathalyzer test results, including by presenting the interlocking testimony of two expert witnesses, and was remarkably successful in overcoming this theory of the case. See note 7, supra. Although counsel was not successful in overcoming the other theory of the case -- that the defendant was under the influence of alcohol -- the record also discloses intensive, vigorous efforts to do so. These efforts included presenting expert testimony suggesting that the defendant's behavior in the booking video did not indicate impairment, as well as conducting careful, exacting cross-examinations of police officers and an expert who testified on the subject of field sobriety tests. The strategy culminated in a closing argument that focused almost entirely on the alcohol-related evidence, stressing the reasons why the jury should credit neither the breathalyzer test results nor the other evidence that the defendant was under the influence of alcohol. Had the strategy succeeded on both points, rather than one, the defendant would have won an outright acquittal.

Mass. at 294-295.  Accordingly, the defendant is not entitled to relief by virtue of the trial judge's error.

b.  Relief based on error by counsel.  Whether the defendant is entitled to relief by virtue of an error by counsel, however, is a separate question.  The defendant maintains that his counsel's objection was harmful to his position and that he was prejudiced by his counsel's failure to consult with him about whether to object to (or to request) a lesser included offense instruction.  Had he been consulted, the defendant contends, he would have insisted that the trial judge instruct the jury on the lesser included crime.  The Supreme Judicial Court has left undecided the question whether the defendant has final authority over the decision. See Commonwealth v. Donlan, 436 Mass. 329, 334-335 (2002).  See also Committee for Public Counsel Services, Assigned Counsel Manual c. IV, part 1, § VI.G.1 (2012), https://www.publiccounsel.net /private_counsel_manual/CURRENT_MANUAL_2012/MANUALChap4Criminal Standards.pdf [https://perma.cc/3GR2-9GU6] (criminal defense attorneys should consult with their clients when developing overall defense strategy).

On the record before us, we are unable to reach the merits of the defendant's argument.  "[T]he preferred method for raising a claim of ineffective assistance of counsel is through

a motion for a new trial."  Commonwealth v. Zinser, 446 Mass. 807, 810 (2006).  "[A] 'claim of ineffective assistance may be resolved on direct appeal of the defendant's conviction when the factual basis of the claim appears indisputably on the trial record.'"  Id. at 811, quoting from Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994).  Here, there is no affidavit from counsel in the record, and the trial judge has not had an opportunity to review the defendant's claim.[11]

c.  The rule 25(b)(2) motion.  The defendant's motion under Mass.R.Crim.P. 25(b)(2), as amended, 420 Mass. 1502 (1995), argued, in broad terms, that he was entitled to relief in order to correct the trial judge's error and to promote substantial justice.  He specifically sought a reduction in the verdict, and not a new trial, explaining that this would promote the interests of judicial economy by obviating the need for him to bring a motion for a new trial based on ineffective assistance.[12] The motion judge, who was not the trial judge, denied the motion based on the weight of the evidence.  See Commonwealth v. Rolon,

---

[11] Although the defendant submitted his own affidavit, it was presented in support of a motion to reduce the verdict to the lesser included offense, pursuant to Mass.R.Crim.P. 25(b)(2), as amended, 420 Mass. 1502 (1995).

[12] The defendant described his ineffective assistance claim, but did not assert it, saying that such a claim would be based, at least in part, on counsel's alleged failure to consult with him.  It was in this context that he cited his affidavit.  See note 11, supra.

438 Mass. 808, 822 (2003) (reduction to lesser verdict is not justified if it would be inconsistent with weight of evidence, or if made based on factors irrelevant to level of offense proved).

On appeal, the defendant argues that the motion judge erred in his disposition of the motion because it challenged the fairness of the trial, not the weight of the evidence. See Commonwealth v. Pring-Wilson, 448 Mass. 718, 731 (2007).[13] A judge's powers under rule 25(b)(2), he correctly notes, include the power "to ameliorate injustice caused by the Commonwealth, defense counsel, the jury, the judge's own error, or . . . the interaction of several causes." Woodward, 427 Mass. at 667.

The issue is moot. The defendant's motion did not seek relief based on an error by counsel, see note 12, supra, and inasmuch as it sought relief based on the trial judge's error, his argument merges into that which we have already addressed in this appeal.

5. Other ineffective assistance claims. Separate and apart from the ineffective assistance claim premised on counsel's objection to the lesser included instruction, the

---

[13] See also Kendrick, 351 Mass. at 213 (distinguishing between concern regarding "the propriety of the verdict returned by the jury" and concern regarding "the impropriety of withdrawing from their consideration another verdict which, although they might not have reached it, was nevertheless open to them upon the evidence").

defendant also argues that he received ineffective assistance for three other reasons. Two are based on omissions by counsel, and must be treated separately.

a. Arguments based on omission. First, the defendant claims that his counsel was ineffective because, during the hearing on the motion to suppress the breathalyzer test results, he failed to impeach two witnesses -- officers who were involved in the booking process -- by pointing out inconsistencies between their testimony and the booking video. Second, he claims that his counsel was ineffective because, at trial, he did not object to testimony from Officer Duffy, who opined on the ultimate issue when he stated that, based on the field sobriety tests and his other observations at the crash site, he "formed the opinion that [the defendant] had been operating under the influence of alcohol."

"Because virtually any omitted objection or argument can, at least on its face, be attributed to ineffective assistance of counsel, a wise defendant could in most cases opt for a more favorable standard of review simply by couching his waived claim in the language of ineffective assistance." Randolph, 438 Mass. at 295. That is precisely what the defendant does with these arguments. As this has the potential to produce awkward results, in circumstances such as these, we do not evaluate the ineffective assistance claim separately from the underlying

waived objection or argument; rather, we determine whether there was a substantial risk of a miscarriage of justice. Id. at 295-296. "[I]neffectiveness is presumed if the attorney's omission created a substantial risk, and disregarded if it did not." Id. at 296.

For the reasons we have already discussed, the purpose underlying the fifteen-minute waiting period rule was satisfied, and the minor inconsistencies between the officers' testimony and the booking video were immaterial. Moreover, counsel successfully undermined the reliability of the test results -- the jury so distrusted the .19 percent readings that they rejected the theory that the defendant had a BAC of even .08 percent. There is no substantial risk of a miscarriage of justice in these circumstances.

As to Officer Duffy's opinion testimony, it was, of course, improper. "In a prosecution for operating a motor vehicle while under the influence of alcohol, lay witnesses, including police officers, may not opine as to the ultimate question whether the defendant was operating while under the influence, but they may testify to his apparent intoxication." Commonwealth v. Canty, 466 Mass. 535, 541 (2013), quoting from Commonwealth v. Jones, 464 Mass. 16, 17 n.1 (2012). However, the defendant is not entitled to relief based on this error because, "in the context of the entire trial," we cannot reasonably conclude "that the

error materially influenced the verdict." Randolph, supra at 298. As we have already discussed in extensive detail, there was overwhelming evidence that the defendant was under the influence of alcohol. The officer's statement -- made immediately after he described the great number of ways in which the defendant failed the field sobriety tests, and used as a prelude to then explain why he arrested the defendant -- cannot fairly be said to have added anything meaningful to the issue. While the testimony was objectionable, and should have been excluded had an objection been made, we are not left with "a serious doubt whether the result of the trial might have been different had the error not been made." Azar, 435 Mass. at 687.

b. Argument based on affirmative acts. Lastly, the defendant argues that his counsel erred, and was ineffective, by introducing in evidence a nine-minute video recording (interview video) of his aborted interview with Officer Duffy and Captain Daniel Spaulding, which took place a few hours after the accident, at approximately 1:25 A.M., and after the defendant had been Mirandized. At the beginning of the interview video, Captain Spaulding asks the defendant whether he wishes to waive his Miranda rights and describe the incident. Several times, the defendant says he thinks he may want to speak with an attorney, but he also vacillates throughout that time and does not make any clear decision until the very end of the interview

video.  See Commonwealth v. Peixoto, 430 Mass. 654, 658 (2000)

(defendant's invocation of right to counsel must be sufficiently

unambiguous).  While the defendant comes to his decision, he

also offers a terse, fragmented description of the incident, to

the effect that the victim came into the road as he was driving,

and he swerved instinctually.[14]

It is far from clear, on the record, why counsel wished to

introduce the interview video.  The prosecutor was sufficiently

concerned about it that he informed the trial judge, at a

sidebar conference partway through the recital of Officer

Duffy's testimony, of defense counsel's intent to introduce it.

The prosecutor said it would create "volatile ground" because it

would "open[] the door" for him to pose otherwise improper

questions to police officers, and because the jury would see the

defendant invoke his right to remain silent.  The trial judge

was puzzled by counsel's desire to use the interview video, and

she was rightly concerned about the jury seeing the defendant

invoke his right to remain silent.  "[T]testimony regarding a

defendant's statements about his desire not to speak with police

---

[14] In the interview video, Captain Spaulding, without posing a question to the defendant, described the interview as an opportunity for the defendant to relate the incident and fill in any "holes" in the investigation.  To this, the defendant responded, "I just (pause).  There's no holes.  I mean, going to the road, and (pause).  Coming across the street (pause).  Swerved (pause).  First instinct, you know, I mean (pause)."

may suggest to the jury that the defendant is guilty simply because he chose to exercise his constitutional right to silence."  Commonwealth v. Beneche, 458 Mass. 61, 75 (2010).

Counsel gave the trial judge two explanations for why he wished to introduce the interview video, neither of which is particularly illuminating.  First, he said the interview video would support his contention that the officers failed, during their investigation, to take into account the defendant's statements, at the scene of the accident, that the victim "jumped out" in front of him.[15]  The defendant made such a statement, first, to the motorist who first happened upon the accident, upon his arrival; and second, to Officer Duffy, prior to the field sobriety tests.  But, as the trial judge noted, both the motorist and Officer Duffy had already testified as to those statements.  Additionally, counsel did not mention the interview video when, in his closing argument, he discussed the defendant's statement that the victim "jumped out" in front of the vehicle.

Second, counsel said that he wished to use the interview video to rebut anticipated testimony from Captain Spaulding, who counsel said was "being called with new information to say the defendant seemed impaired and act[ed] confused during" the

---

[15] Precisely how the interview video would support this argument remains unclear.

interview.  However, the prosecutor replied that Captain Spaulding was "only being called in response to [defense counsel] putting [the video] in."  And, in counsel's closing argument, he only refers to the interview video in an attempt to undermine Captain Spaulding's credibility.

It is quite possible that the record does not accurately or completely reflect counsel's stated reasons for introducing the interview video, and it is also possible that there are additional, more clearly compelling reasons he did so.  We are only able to say that there is a significant question of fact concerning the purpose of the interview video.[16]  As the defendant failed to first assert this ineffective assistance claim in the trial court, the record before us is bereft of any factual findings on this critical question, with the result that we are unable to ultimately reach the argument now pressed by the defendant.  See Zinser, 446 Mass. at 810-811 (ineffective assistance argument should first be raised in motion for new

---

[16] There also exists an unresolved factual question whether and to what extent the interview video may have caused the defendant to suffer prejudice.  On the one hand, evidence of a defendant's desire not to speak with police may be indicative of consciousness of guilt.  See Peixoto, 430 Mass. at 658; Beneche, 458 Mass. at 75.  On the other hand, the interview video may have created sympathy for the defendant -- he is visibly distraught and overwhelmed; he asks after the condition of the victim; he says, with apparent earnestness, that he does not want to hinder the officers' work by not speaking; and when he finally decides not to answer any questions, he apologizes.

trial, and may only be raised for first time in appellate proceeding when its factual basis is clear on record).

Conclusion.  On the record before us, the defendant has failed to demonstrate that his conviction should be reversed, and therefore we affirm the judgment of conviction.  We also conclude that the single justice did not abuse his discretion in denying the defendant's renewed motion to stay execution of his sentence, and we therefore affirm the single justice's order denying that renewed motion.

So ordered.